**ILLINOIS HEALTH CARE ASSOCIATION, et al., Plaintiffs,**

v.

**Susan S. SUTER, Director of the Illinois Department of Public Aid, et al., Defendants.**

**No. 89 C 849.**

United States District Court, N.D. Illinois, E.D.

Oct. 26, 1989.

James J. Casey, Lawrence A. Manson, Keck, Mahin & Cate, Chicago, Ill., Bruce Stratton, Thomas J. Reed, Stratton, Dobbs, Nardulli & Lestikow, Springfield, Ill., for plaintiffs.

Neil F. Hartigan, Atty. Gen. of Illinois, James O'Connell, Owen M. Field, Sp. Asst. Attys. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Illinois Health Care Association and Heartland Manor Nursing Center, Inc. originally sued both Illinois Department of Public Aid Director Susan Suter ("Suter") and United States Secretary of Health and Human Services Louis Sullivan ("Secretary"),[1] asserting a number of violations of the Medicaid Act ("Act"), 42 U.S.C. §§ 1396–1396s.[2] Suter and Secretary were sued only in their official capacities.

Suter and Secretary filed separate motions to dismiss under Rule 12(b)(6). This Court's August 4, 1989 memorandum opinion and order (719 F.Supp. 1419 (N.D.Ill. 1989) (the "Opinion")) granted Secretary's motion, citing lack of subject matter jurisdiction. However, Opinion at 1427 deferred resolution of Suter's motion pending further briefing by the parties on the threshold question of whether the recent decision in *Will v. Michigan Department of State Police*, — U.S. —, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) has rendered Section 1983 unavailable to plaintiffs here.

It is now clear that *Will* does *not* bar plaintiffs' Section 1983 claim. But an even newer development now counsels the further deferral of a final ruling on Suter's motion. Before that new consideration is dealt with, this opinion addresses the topic left open by the Opinion.[3]

### Will and the Eleventh Amendment

As noted in Opinion at 1425, Section 1983 provides the only statutory vehicle potentially available to require Suter's compli-

---

1. Initially the second-named defendant was then Secretary Otis Bowen ("Bowen"). As a result of Bowen's resignation and Sullivan's confirmation as his successor, Sullivan has automatically been substituted as defendant under Fed.R. Civ.P. ("Rule") 25(d)(1). Because the substitution has no substantive effect on the result, this opinion simply refers to "Secretary" throughout.

2. All further references to the Act (which is Title XIX of the Social Security Act) will take the form "Section—," reflecting Title 42's numbering rather than the Act's internal numbering.

3. In the interest of brevity, this opinion assumes familiarity with the background and statutory framework relevant to this action, as set out in Opinion at 1419–23.

ance with the Act (if she is in fact violating the Act). Because plaintiffs sue Suter in her official capacity, it becomes necessary to examine *Will's* restrictive definition of "persons" entitled to invoke Section 1983.

> *Will,* 109 S.Ct. at 2312 says flatly:
>
> Neither a State nor its officials acting in their official capacities are "persons" under § 1983.

Without more, that unqualified assertion would render Suter—wearing her official-capacity hat—immune to plaintiffs' present action. But *Will, id.* at 2311 n. 10 restores what the quoted sentence seems to take away: It imports familiar principles of Eleventh Amendment jurisprudence to provide an exception to the apparently rigid and restrictive definition of "persons." Calling on the fiction (originally expounded in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)) that any state official who violates constitutional rights is perforce stripped of his or her official character and is thus no longer protected by the sovereign's immunity, *Will's* n. 10 (citations omitted) says:

> Of course a State official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official capacity actions for prospective relief are not treated as actions against the State." . . . This distinction is "commonplace in sovereign immunity doctrine," . . . and would not have been foreign to the 19th-century Congress that enacted § 1983. . . .

Thus the operative question becomes whether plaintiffs' prayer for declaratory judgment falls into the category of actions seeking prospective relief, allowable under Section 1983 by *Will*'s n. 10 and under the Eleventh Amendment by *Ex parte Young,* or into the disallowed category of actions seeking to tap the State treasury. By now it is familiar doctrine that the line between such allowed and disallowed actions is not one between night and day—for the simple fact that the sought-after relief will have adverse fiscal consequences for the sovereign will not automatically bar the claim (*Edelman v. Jordan,* 415 U.S. 651, 667–68, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1974)). Instead a court must look beneath the surface of plaintiffs' declaratory judgment claim to determine its true objectives in the terms made dispositive by *Ex parte Young* and its progeny.

*Edelman, id.* at 668, 94 S.Ct. at 1358 has made it plain that no matter how it is labeled, any relief that amounts to a damage award will be barred by the Eleventh Amendment. Had plaintiffs here sought reimbursement for the claimed past underpayments stemming from Suter's allegedly illegal reimbursement scheme, this Court would have had to dismiss their claim. But plaintiffs have made it equally clear that such is *not* their intention, nor would such reimbursement automatically flow from their success on the merits. As plaintiffs would have it, a declaration by this Court to the effect that Suter is violating the specified provisions of the Act— that the Illinois Medicaid nursing home payment system does not meet the federal standards—would leave several options open to Suter. Plaintiffs' current Mem. 3–4 lists three such options in these terms:

1. Withdraw from the Medicaid program and design a health and welfare system for indigents that is not subject to federal regulation and which can be wholly responsive to state budget constraints.

2. Shift funds around within the overall Medicaid budget so that the total budget does not change. While this may require cutting the "extras" from the system (i.e. the optional coverages which states may but are not required to offer under federal law), this may be the necessary consequence of living within a budget and complying with federal law.

3. Increase funding for the system. Quantifying this amount is not possible at this early stage of litigation. The amount will be whatever is necessary to conform the system to federal standards —i.e. to meet the costs which must be incurred by "efficient and economic" facilities.

Options 1 and 2 would by definition involve no drain on the sovereign's fisc. Of course option 3 (which might be assumed to

represent plaintiffs' preferred outcome) would impact state finances. However, the existence of such financial impact is not itself dispositive, for as *Papasan v. Allain,* 478 U.S. 265, 278–79, 106 S.Ct. 2932, 2940–41, 92 L.Ed.2d 209 (1985) teaches:

> [R]elief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury.

By contrast, *Edelman,* 415 U.S. at 668, 94 S.Ct. at 1358 held the underlying claim in that case was retrospective and violative of the Eleventh Amendment because the amount of fiscal burden placed on the State would be measured in terms of a monetary loss resulting directly from a *past* breach of a legal duty on the part of the defendant State officials.

 It seems the line between an "ancillary" economic effect (permitted by the Eleventh Amendment) and a "direct" effect (barred by that Amendment) depends on whether the finding of State violations of federal law will be accompanied by an order to make whole the individuals who were injured by those past violations. If the federal court simply orders a State to conform its future conduct to the requirements of federal law, though that will cost money (even a good deal of it), that future impact on the State treasury is normally perceived as "ancillary" (*Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979)).

Here plaintiffs make no plea for reparations of the harm caused by Suter's alleged past violations of the Act, asking instead only for a declaration as to whether Suter's admitted conduct amounts to a continuing violation of the Act.[4] Neither *Will* nor the Eleventh Amendment bars this action.

### Private Right of Action

With that threshold issue out of the way, this opinion turns to a different aspect of plaintiffs' asserted right to sue under Section 1983. *Wright v. Roanoke Redevelopment & Housing Authority,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987) articulates the general rule that it is permissible to bring such an action charging a federal statutory violation unless:

1. Congress has foreclosed such enforcement in the enactment itself or

2. the statute did not create "enforceable rights" within the meaning of Section 1983.

Suter urges the second of those exceptions applies here: the absence of an "enforceable right" under the relevant statute. That troublesome question as it applies to the Medicaid Act has created a good deal of judicial activity (including some by this Court in earlier cases (see, e.g., *Almond Pharmacy, Inc. v. Mankowitz,* 587 F.Supp. 925 (N.D.Ill.1984))—and with differing outcomes. Earlier this month the Supreme Court decided to resolve that conflict by granting certiorari in *Baliles v. Virginia Hospital Association,* —— U.S. ——, 110 S.Ct. 49, 107 L.Ed.2d 18 (1989)).

With a definitive ruling on that crucial issue forthcoming this Term, a stay of this Court's decision on the identical question seems prudent *unless* serious prejudice would be caused by such a deferral. Accordingly Suter's motion to dismiss is indeed further deferred until the issuance of the Supreme Court's opinion in *Baliles.* And to minimize (if not indeed to avoid entirely) any potential prejudice from the resulting delay,[5] this Court not only suggests but encourages the parties to conduct any discovery that is not overly burdensome and that would be needed to move forward on plaintiffs' underlying substantive claim that the current formula for calculating cost reimbursement fails to

---

4. Plaintiffs' reference to the inadequacy of "past and current" payment rates in Complaint ¶ 33 does not transform this action into one for retrospective relief. That language may fairly be read as an allegation of a continuing violation of the Act.

5. It must be remembered that if plaintiffs do prove themselves entitled to relief, the same considerations dealt with in the prior section of this opinion will prevent them from recovering any losses sustained in the gap period.

meet federal standards. That course of action will facilitate an expeditious consideration of the merits of this case should the Supreme Court hold that litigants such as plaintiffs do have enforceable rights allowing them to maintain suit under Section 1983.

### Conclusion

Consideration of Suter's motion to dismiss is stayed pending the Supreme Court's decision in *Baliles*. This action is set for a status hearing at 9 a.m. January 30, 1990 so the parties may report on the posture of any interim discovery.